UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| US FIRE PUMP COMPANY, L.L.C., <br> Plaintiff, | § § § | CIVIL ACTION NO. 3:19-cv-00335 |
| v. | § § | CHIEF JUDGE SHELLY D. DICK |
| ALERT DISASTER CONTROL (MIDDLE EAST) LTD., ET AL., <br> Defendants. | § § § § | MAGISTRATE JUDGE ERIN WILDER-DOOMES |

**THIRD PARTY DEFENDANTS EMIRATES NATIONAL OIL COMPANY LIMITED (ENOC) LLC AND ENOC PROCESSING COMPANY LLC'S REPLY IN SUPPORT OF <u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

Third-party plaintiffs ALERT's[1] opposition exposes fatal shortcomings in its attempt to create jurisdiction over foreign third-party defendants ENOC and ENOC Processing:

- ALERT concedes that the contract negotiations, contemplated work, and refinery incident site are all across the world in the United Arab Emirates;

- ALERT admits that ENOC and ENOC Processing had no contacts whatsoever with Louisiana or the Louisiana-based Plaintiff, U.S. Fire Pump Company, L.L.C.;

- ALERT fails to marshal a single contract provision or communication evidencing any ENOC/ ENOC Processing control over ALERT's separate performance as an independent contractor.

ALERT's specific jurisdiction argument[2] is largely based upon its abrupt departure from ALERT's prior jurisdictional challenge in the main cause of action. ALERT Opp. at 13. However, ALERT improperly attempts to impute *its own* forum contacts to ENOC and ENOC

---

[1] Unless otherwise defined herein, capitalized terms refer to the meanings given to them in ALERT's Third-Party Complaint and ENOC / ENOC Processing's Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction.

[2] ALERT concedes that it has abandoned any argument regarding general jurisdiction. ALERT Opp at n.3.

Processing to establish personal jurisdiction, thus eviscerating the independent contractor relationship between the parties. ALERT's core allegations are undisputed:

>   (1)   that ENOC and ENOC Processing (two UAE companies) contracted with ALERT Middle East, a company organized under the laws of Cyprus with its primary place of business in the UAE, for work to be performed in the UAE; and
>
>   (2)   ALERT Middle East would carry out that work under the supervision of Michael E. Allcorn, a Canadian citizen and resident of Singapore and the UAE.

*See* ALERT Compl. ¶¶1, 3-5, 17. The unremarkable fact that the foreign work would be performed with materials sourced from various jurisdictions across the globe (including Louisiana) does not diminish the foreign nature of the ALERT contract. ALERT has failed to establish minimum contacts with Louisiana.

ALERT also expressly bargained for and retained complete discretion as to the means to carry out its work, including sourcing of materials. As a result, nothing about the foreign ALERT-ENOC/ENOC Processing relationship—even purported acknowledgments that ALERT would source limited equipment from Louisiana—indicates ENOC and ENOC Processing "purposefully directed its activities at the forum state" to reasonably anticipate that it would be forced to appear in a Louisiana court. In sum, ALERT seeks an absurd result—that a foreign entity is subject to personal jurisdiction in virtually any forum where its indirect supply chain leads, even when that party's contract specifies that an independent contractor controls every facet of that supply chain. ENOC and ENOC Processing's Motion to Dismiss should be granted.

I.   **ALERT failed to establish that ENOC And ENOC Processing had Louisiana contacts, and instead relied upon ALERT's own contacts and representations.**

ALERT's attempt to impute its Louisiana contacts to ENOC and ENOC Processing ignores well-settled legal precedent that the minimum-contacts relationship "must arise out of contacts that the defendant *himself* creates with the forum." *See Walden v. Fiore*, 571 U.S. 277,

284 (2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original, internal quotations omitted). "Due process requires that a defendant be hauled into court in a forum State *on his own affiliation* with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id*. at 286 (emphasis added, quotation marks and citation omitted).

ALERT's jurisdictional allegations demonstrate that, at most, ENOC and ENOC Processing interacted with ALERT and that ALERT took purposeful and affirmative action that caused business activity in Louisiana. It was ALERT that (disputedly) contracted with a Louisiana resident. *See id.* at 4. ENOC and ENOC Processing did not. *See* Motion to Dismiss, Ex. A (Decl. of Sanjiv Kapoor, ¶¶8-17); Ex. B (Decl. of Farid Badri, ¶¶8-17). It was ALERT who elected to source materials from a Louisiana resident. *See* ALERT Opp. at 5. ENOC and ENOC Processing did not. *See id.* And it was ALERT that exercised a "significant measure of control" over the materials and equipment as set out in the Work Order. ENOC and ENOC Processing did not and, in fact, could not per the terms of the parties' contract.

ALERT glosses over the fact that it retained complete discretion over the work and materials in its own form Work Order:

> Client [ENOC and ENOC Processing] further agrees as follows:
>
> 1. That Company [ALERT] is an independent contractor **with complete discretion** as to the means to be employed in performing **all requested services**; and
>
> 2. That Client [ENOC and ENOC Processing] has complete authority, dominion and control over the site, facility, cargo, product, product containment vessel involved, and any aviation, marine, road and rail transport and/or related equipment there located, **exclusive of that supplied by Company [ALERT]**.

*Id.* Ex. A-1 (emphasis added). ALERT's argument that ENOC and ENOC Processing "exercise[d] control over sourcing of materials under the ENOC Contract" thus flies in the face of the black-

and-white terms of ALERT's own form language. *See id.* at 8. Nor has ALERT pointed to any related contract documents, equipment lists, or contemporaneous correspondence to support its conclusory "control" argument.

Under the ENOC Contract, ALERT had "complete discretion" as to how and where to source the equipment required to do the work. ALERT exercised that discretion: *ALERT* merely informed ENOC and ENOC Processing that the equipment *ALERT* needed for the work was expected to be sourced from Spain, Singapore, and Louisiana. *See* Third Party Compl. ¶25; *see also* ALERT Opp., Ex. A ¶8. Neither ENOC nor ENOC Processing made that decision. *See* Motion to Dismiss Ex. A (Decl. of Sanjiv Kapoor, ¶20); Ex. B (Decl. of Farid Badri, ¶20). Nothing prevented ALERT from sourcing equipment from UAE, China, or any other jurisdiction with supplies.

Contrary to ALERT's allegations, ENOC and ENOC Processing's passive acknowledgement of ALERT's expected supply chain does not constitute "purposeful action" to cause "anticipated business activity" in Louisiana sufficient to establish minimum contacts. The Fifth Circuit has identified factors that determine whether an entity has taken such action, including "where the contract was formed, where it would be performed, whether the plaintiff's business is conducted solely in the forum, the hub of the parties' activity, where payments under the contract were tendered, any choice of law provision in the contract, and the foreseeability that a material part of the obligations under the contract would be performed in the forum." *Special Industries, Inc. v. Zamil Group Holding Co.*, 578 Fed. Appx. 325, 331 (5th Cir. 2014) (citing factors identified in *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312-13 (5th Cir. 2007)). None of those factors point to purposeful action toward Louisiana by ENOC and ENOC Processing.

In *Special Industries*, the Fifth Circuit considered a similar fact pattern to this case—except that the defendants had far greater contacts with the forum (Texas) than ENOC or ENOC Processing have to Louisiana. The defendants, two Saudi Arabian companies, contracted with the plaintiff, a Delaware entity with offices in Texas, to develop a pipe heat-treating and threading plant in Saudi Arabia. *Id.* at 326.[3] The Fifth Circuit determined that personal jurisdiction did not arise in Texas in spite of the fact that: (i) the plaintiff maintained an office in Texas and performed part of the work under the contract in Texas; (ii) executives of the defendants visited Texas on three occasions in connection with the work under the contract; and (iii) the defendants contractually bound the plaintiff to engage in business activity in Texas by negotiating a license to use the threading tools of a Texas-based company. *Id.* at 329-31.

Applying the factors identified in *Moncrief*, the Court stated:

> **The foreseeability that [plaintiff] SII would perform part of its obligations under the contract in Texas**, and that the parties did in fact engage other Texas companies for work on the project, **is not enough for a finding of specific jurisdiction over the Zamil defendants**. The contracts were formed outside of Texas, did not expressly provide for work to be done in Texas, the SII individuals performing work under the contract did not do so solely from Texas, Texas was not the hub of the parties' activities, the contracts' choice of law provisions did not provide for Texas law, and payments under the contract were not made to Texas.

*Id.* at 331.

The relevant jurisdictional facts here are virtually identical—UAE is the "hub" of the parties' activities. *See* Motion to Dismiss Ex. A (Decl. of Sanjiv Kapoor, ¶18); Ex. B (Decl. of Farid Badri, ¶18). The ENOC Contract was formed in the UAE, not in Louisiana. *See* Motion to Dismiss, Ex. A (Decl. of Sanjiv Kapoor, ¶18); Ex. B (Decl. of Farid Badri, ¶18). The ENOC

---

[3] Notably, the plaintiff in *Special Industries* primarily relied on the same legal authority as ALERT does here as the basis for the exercise of personal jurisdiction. *See Special Industries*, 578 Fed. Appx. 325 at 330 ("The primary case cited by SII to support its jurisdictional argument is *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir.1982)."); *compare to* ALERT Opp. at 8-9. While the principles of *Transpo* provide for personal jurisdiction over ALERT in this case, each determination of a party's minimum contacts "must be decided on its own facts." [Dkt. 54] (1/28/21 Ruling); *Sw. Offset, Inc. v. Hudco Pub. Co., Inc.*, 622 F.2d 149, 151 (5th Cir.1980).

66514124                                   5

Contract does not expressly provide for any work to be performed in Louisiana. *See* ALERT Opp., Ex. A-1 (Work Order); Ex. 1-A (Service Proposal).[4] ALERT has confirmed that it has never performed any business in Louisiana. Ex. 1 to ALERT Motion to Dismiss (Allcorn Decl.) [Dkt. 44-2] ¶¶4-6. While the ENOC Contract is silent on choice of law, ALERT made clear in its demand letter to ENOC and ENOC Processing that it considers UAE law to apply. *See* ALERT Opp., Ex. A-1 (Work Order); Ex. 1-A (Service Proposal); Ex. 1-B (Demand Letter) ¶22 (asserting breach of "obligations under UAE law"). Likewise, while no payments were made under the ENOC Contract, ALERT directed payment to its Singapore accounts. Ex. 1-B (Invoices). ALERT has not cited any authority that extends federal jurisdiction to preside over two foreign entities disputing work in a foreign jurisdiction under a contract governed by UAE law.

Even taking ALERT's allegation that ENOC and ENOC Processing "exerted control" over sourcing of materials under the ENOC Contract (which they did not) as true *arguendo*, this would still be insufficient to establish minimum contacts because the sourcing of foam from Louisiana was not a "material part of the obligations under the contract" that ALERT was to perform. *See Special Industries,* 578 Fed. Appx. at 331 (citing *Moncrief*, 481 F.3d at 312-13). Sourcing of the Louisiana Equipment and Foam was only a part of the total package of fire-fighting services that ALERT that included "provision of specialist personnel, equipment, systems, materials, products and further technical / product support for the performance or attempted performance of flammable liquid vapor suppression and contingent full-scale fire extinguishment operations." Ex. 1-A (Service Proposal). Even ALERT concedes that "the bulk of the Foam was to come from Spain" rather than Louisiana. ALERT Opp., Ex. A ¶ 12. Accordingly, the Court

---

[4] The Work Order expressly specifies that ALERT is requested to perform the services "At the following location: Jebel Ali, United Arab Emirates." Likewise, the Service Proposal contains no reference to Louisiana at all but only to mobilization from Houston and Spain.

should follow the Fifth Circuit reasoning in *Special Industries* and *Moncrief* and grant the motion to dismiss. *See Special Industries,* 578 Fed. Appx. at 329-30 ("Much as in *Moncrief*, Zamil's single act of contracting with SII, while potentially based on knowledge that SII would perform many of its obligations in Texas, is not enough. . . . [T]he only work required to be performed in Texas by the First and Second MOUs was the negotiation of a license agreement with Hunting. The contacts with other Texas-based companies were primarily the result of the unilateral activity of SII and not required by the terms of the parties' agreements.").

ALERT's reliance on *Cent. Freight Lines. v. APA Transp. Corp.*, 322 F.3d 376 (5th Cir. 2003) is misplaced for the same reasons. Unlike the agreement at issue in *Cent. Freight Lines. v. APA Transp. Corp.*, 322 F.3d 376 (5th Cir. 2003) in which the defendant agreed to accept shipments from Texas, ALERT's Work Order makes no reference to Louisiana whatsoever. *See generally* ALERT Opp., Ex. A-1. The same is true for its detailed Service Proposal, which does specifically call out other supply chain jurisdictions such as Texas and Spain. *See generally* Ex. 1-A (Service Proposal). Further still, the defendant in *Cent. Freight* "specifically 'reached out' to a Texas corporation by telephone and mail with the deliberate aim of entering into a long-standing contractual relationship with a Texas corporation." 322 F.3d at 382. In contrast, neither ENOC nor ENOC Processing ever "reached out" to a Louisiana corporation at all, much less with "with the deliberate aim of entering" into any contractual relationship. *See* ALERT Compl. ¶1; Motion to Dismiss Ex. A ¶18, Ex. B ¶18.

In sum, ALERT seeks to transform awareness of a contractor's supply chain into a waiver of personal jurisdiction defenses in various jurisdictions—a remedy that is at odds with well-established legal precedent in the Fifth Circuit. ALERT has failed to meet its burden to establish minimum contacts by ENOC and ENOC Processing.

## II. ALERT's merits arguments about a narrow sitework indemnity cannot salvage its specific jurisdiction arguments.

Lacking facts that tie ENOC and ENOC Processing to Louisiana, ALERT injects merits argument on its breach of contract and indemnity claims—distractions from the threshold question on jurisdiction. *See, e.g.,* ALERT Opp. at 7, 11 (discussing "unpaid invoices" and indemnity provisions). These efforts also fall flat, as none of the cases cited by ALERT deal with two foreign entities negotiating limited indemnities dealing with site-specific work in a foreign country. The first case, a guaranty case, *Consolidated Companies, Inc. v. Kern*, is inapposite: there, subsequent business activity in Louisiana was foreseeable to defendant because he "consciously chose to enter into a business relationship with a Louisiana company," and "execute[d] the Guaranty in order to induce [plaintiff] to continue to provide credit" to defendant's various companies. *See* 2000 WL 1036186, at *3 (E.D. La. July 25, 2000). Nothing about the parties' contract here contemplates Louisiana as a potential forum related to work performed in the UAE.

ALERT's other indemnification authorities fare no better, as the indemnification provisions in those cases also expressly contemplated forum-based claims. In *Lake Charles Harbor & Terminal District v. Reynolds Metal Co.*, third-party defendants "expressly agreed to indemnify and defend [third-party plaintiff] for environmental claims arising out" of a piece of real property, a landfill located in Calcasieu Parish, Louisiana. No. 2:17-CV-01114, 2021 WL 2383918, at *6 (W.D. La. June 10, 2021). Thus, because third-party defendants "assumed all liabilities" for the real property in Louisiana, the Court found that they "should reasonably anticipate being haled into a Louisiana court, as Louisiana is the most logical forum." *See id.* Here, the indemnification provision—made between foreign entities for work in UAE— contemplates claims arising from the services furnished in Jebel Ali, Dubai, United Arab Emirates.

Louisiana is not mentioned in any of the contractual documents between ALERT and ENOC and ENOC Processing.  *See generally id.*; ALERT Opp.[5]  The clear import of this provision, instead, is that ENOC and ENOC Processing would indemnify certain claims arising from ALERT's work at the jobsite, in Jebel Ali, Dubai, United Arab Emirates.  *See id.*  It did not, as ALERT suggests, consent to a waiver of personal jurisdiction in far-flung venues.

### III.   Conclusion.

For the foregoing reasons and those set forth in ENOC and ENOC Processing's Motion to Dismiss for Lack of Personal Jurisdiction, ENOC and ENOC Processing request that their motion is granted, and ALERT's claims against ENOC and ENOC Processing should be dismissed with prejudice.

---

[5] In *Casun Inv., A.G. v. Ponder*, the third-party plaintiff was a resident of the forum state.  Thus, it was foreseeable that the third-party defendant would have to indemnify her there.  *See* 2018 WL 934857, at *5 (D. Nev. Feb. 16, 2018).  Moreover, the contract in *Casun* had a Nevada choice-of-law provision.  *See id.*, at *1.

Dated: September 8, 2021

Respectfully submitted,

BAKER BOTTS L.L.P.

By: /s/ *Louis E. Layrisson, III*
Louis E. Layrisson, III
Attorney-In-Charge
Louisiana State Bar No. 31829
Dustin Appel
Texas State Bar No. 2405881
   (admitted *pro hac vice*)
Caleb Wright
Texas State Bar No. 24121901
   (admitted *pro hac vice*)
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1234
Fax: (713) 229-1522
louie.layrisson@bakerbotts.com
dustin.appel@bakerbotts.com
caleb.wright@bakerbotts.com

Attorneys for Emirates National Oil Company Limited (ENOC) LLC & Enoc Processing Company LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2021, a true and correct copy of the foregoing was served by the Court's CM/ECF system on all counsel of record.

By: /s/ *Louis E. Layrisson, III*
Louis E. Layrisson, III