## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| US FIRE PUMP COMPANY, LLC | CIVIL ACTION |
| VERSUS | 19-335-SDD-EWD |
| EMIRATES NATIONAL OIL COMPANY LIMITED and EMIRATES NATIONAL OIL COMPANY PROCESSING LLC | |

## RULING

Before the Court is a *Motion to Dismiss*[1] under Rule 12(b)(2) filed by Third-Party Defendants Emirates National Oil Company Limited ("ENOC Limited") and Emirates National Oil Company Processing LLC ("ENOC Processing") (collectively, "ENOC"). Third-Party Plaintiffs Alert Disaster Control (Middle East) Limited ("Alert Middle East"), Alert Disaster Control (Asia) Pte. Limited ("Alert Asia"), and Michael Allcorn ("Allcorn") (collectively "Alert") filed an *Opposition*[2] to the *Motion*, to which ENOC filed a *Reply*.[3] For the following reasons, ENOC's *Motion to Dismiss*[4] shall be granted.

**I.    BACKGROUND**

**A. Procedural History**

US Fire Pump Company LLC "("US Fire Pump") sued Alert alleging, *inter alia*, breach of contract.[5] Alert filed a *Motion to Dismiss Pursuant to Rule 12(b)(2)/12(b)(5)*[6]

---

[1] Rec. Doc. No. 72.
[2] Rec. Doc. No. 85.
[3] Rec. Doc. No. 86.
[4] Rec. Doc. No. 72.
[5] Rec. Doc. No. 1, p. 4.
[6] Rec. Doc. No. 14.

and a *Motion for Partial Dismissal Pursuant to Rule 12(b)(6)*.[7] The Court granted the first *Motion* and denied the second as moot.[8] US Fire Pump amended its *Complaint*,[9] and Alert filed another pair of *Motions to Dismiss*.[10] The Court granted in part and denied in part the *Motions*.[11] The Court held that it has jurisdiction over Alert.[12] Several months later, Alert filed a *Third-Party Complaint* against ENOC, alleging breach of contract and indemnification if Alert is found liable to US Fire Pump.[13] ENOC now moves to dismiss the *Third-Party Complaint*, arguing that the Court lacks personal jurisdiction over it.

### B. Relevant Facts

The Court provided a full factual recitation in a prior *Ruling*.[14] Given the narrow jurisdictional question before the Court, the Court omits discussion of the underlying dispute between US Fire Pump and Alert. Alert Middle East is organized under the laws of Cyprus with its place of business in the United Arab Emirates ("UAE").[15] Alert Asia is organized under the laws of Singapore with its place of business in Singapore.[16] Allcorn, the sole shareholder of both companies, resides in Singapore, is a permanent resident of Singapore, a registered resident of the UAE, and holds Canadian citizenship.[17] ENOC is organized under the laws of the UAE and has its place of business in the UAE.[18]

---

[7] Rec. Doc. No. 15.
[8] Rec. Doc. No. 35.
[9] Rec. Doc. No. 38.
[10] Rec. Doc. No. 44; Rec. Doc. No. 45.
[11] Rec. Doc. No. 54, p. 50.
[12] *Id*.
[13] Rec. Doc. No. 67.
[14] Rec. Doc. No. 54.
[15] *Id*. at 2.
[16] *Id*.
[17] *Id*.
[18] *Id*. at 2.

In November 2018, ENOC contacted Alert Middle East to discuss the possibility of Alert Middle East performing services in relation to an emergency at a refinery complex in the UAE.[19] For the purposes of this *Ruling*, the Court credits Alert's assertion that Alert Middle East and ENOC entered into a valid contract in early December 2018.[20] Per that contract, Alert Middle East was to provide firefighting equipment and services to ENOC in the UAE.[21] Alert alleges that it informed ENOC that some of the equipment was to be sourced from US Fire Pump in Louisiana.[22] On December 9, 2018, ENOC allegedly informed Alert Middle East that ENOC "would be undertaking the responsibility for hiring and performing freight mobilization of equipment, materials and resources from … Louisiana to [the UAE]."[23]

On December 11, ENOC allegedly ceased all correspondence with Alert.[24] On December 19, 2018, ENOC sent Alert Middle East a termination letter, advising Alert Middle East that its services were no longer needed and asserting that no payments to Alert Middle East were due.[25] Alert Middle East alleges that it performed significantly under the contract until December 19.[26]

Alert advances several theories of recovery, including breach of contract, a demand for indemnification, suit on an open account, unjust enrichment, and negligent misrepresentation.[27] As explained by Alert, "[t]his third-party action has been brought

---

[19] *Id*. at 6.
[20] Rec. Doc. No. 67, p. 8–9; ENOC disputes whether a contract formed. Rec. Doc. No. 72-2, p. 1.
[21] *Id*. at 7–8.
[22] *Id*. at 8.
[23] *Id*. at 11–12.
[24] *Id*. at 12–13.
[25] *Id*. at 13–14.
[26] *Id*. at 14–15.
[27] *Id*. at 20–23.

because Alert Middle East's discussions with US Fire Pump were undertaken to source equipment and firefighting foam for [ENOC] under the ENOC contract."[28] In other words, Alert asserts that its alleged breach of the alleged contract between it and US Fire Pump was the direct result of ENOC's alleged breach of the alleged contract between it and Alert.

## II.  LAW AND ANALYSIS

### A.  Personal Jurisdiction: Rule 12(b)(2) Motion to Dismiss

Alert asserts that the Court has specific personal jurisdiction over ENOC for two reasons.[29] First, ENOC's indirect sourcing of equipment in Louisiana had an effect in Louisiana.[30] Second, ENOC purposefully availed itself of the privilege of conducting activities in Louisiana since it allegedly contracted with Alert with knowledge that equipment required for the performance of that contract would be sourced from Louisiana.[31]

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if: (1) the long-arm statute of the forum state enables personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause. The due process and long-arm statute inquiries merge because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause.[32]

---

[28] Rec. Doc. No. 85, p. 2.
[29] *Id*. at 2–4.
[30] *Id*. at 2–4.
[31] *Id*. at 2–4.
[32] *Petroleum Helicopters, Inc. v. Avco Corporation*, 834 F.2d 510, 512 (5th Cir.1987).

A court may exercise specific jurisdiction[33] in conformity with due process "in a suit arising out of or related to the defendant's contacts with the forum"[34] when the "'nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'"[35] The Fifth Circuit follows a three-step analysis for specific personal jurisdiction. First, a court must determine "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[36] The "'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state."[37] Second, a court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[38] Third, "[e]ven if minimum contacts exist, the exercise of personal jurisdiction over a non-resident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends traditional notions of fair play and substantial justice."[39]

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the

---

[33] Alert does not allege general jurisdiction.
[34] *Luv N' Care, Ltd., v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted).
[35] *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir.2008)).
[36] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).
[37] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 ("This 'purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.") (citations omitted); *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576, 588 (5th Cir. 2014).
[38] *Seiferth*, 472 F.3d at 271.
[39] *Ruston Gas Turbines*, 9 F.3d at 421 (internal citations omitted).

nonresident."[40] When a district court rules on a motion to dismiss without an evidentiary hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction.[41] At this stage, uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiff's favor.[42] To aid resolution of the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery . . . . But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."[43] "When deciding a motion to dismiss for lack of personal jurisdiction, the court is not limited to considering the facts pleaded in the complaint."[44]

### B. ENOC's Contacts with Louisiana

The Court begins by analyzing ENOC's contacts with Louisiana. Because the Court concludes that ENOC lacks minimum contacts with Louisiana, the Court does not reach the latter stages of the analysis.

Alert alleges, citing a *Declaration* by Allcorn,[45] that ENOC had several contacts with Louisiana. First, ENOC allegedly approved the acquisition of equipment from Louisiana.[46] Second, ENOC informed Alert that ENOC would transport the equipment from Louisiana to the UAE.[47] Third, ENOC "insisted on, and performed, detailed review

---

[40] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).
[41] *Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230–31 (5th Cir. 1995).
[42] *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).
[43] *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008) (holding that the district court erred in requiring a plaintiff to establish more than a *prima facie* case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).
[44] *Id.*
[45] Rec. Doc. No. 85-1.
[46] *Id.* at p. 2.
[47] *Id.*

and discussion of the details of the [Louisiana equipment] …. The sourcing and details of the [Louisiana equipment] were developed from this discussion and under the detailed specifications required and demanded by [ENOC]."[48] ENOC counters that Alert is trying to impute its contacts with Louisiana to ENOC.

In *Walden v. Fiore*,[49] the Supreme Court reiterated that "[f]or a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[50] The relationship between the defendant and forum State "must arise out of contacts that the defendant *himself* creates with the forum State."[51] The due process limits of personal jurisdiction exist "principally [to] protect the liberty of the nonresident defendant—not the convenience of the plaintiffs or third parties."[52] Further, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[53] Finally, "[d]ue process requires that a defendant be haled into court in a forum state based on his own affiliation with the State, not based on the 'random, fortuitous or attenuated' contacts he makes by interacting with other persons affiliated with the state."[54]

ENOC's first purported contact with Louisiana is its approval of the acquisition of equipment from there. To the extent this action may be considered a "contact" at all, it is attenuated. Rather, ENOC approved Alert Middle East's acquisition of equipment, and

---

[48] *Id*. at 5.
[49] 571 U.S. 277 (1984).
[50] *Id*. at 284.
[51] *Id*.
[52] *Id*.
[53] *Id*. at 285.
[54] *Id*. at 286 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

ENOC knew that the equipment would come from Louisiana. This "contact" fits the mold of a "random, fortuitous, or attenuated contact" made "by interacting with other persons affiliated with the state"—in this case Alert Middle East.[55]

ENOC's second purported contact with Louisiana is that it informed Alert that ENOC would transport the equipment from Louisiana to the UAE. This is not a contact. At most, this is an expression of an intention to perform an action that could constitute a contact. Alert does not allege that ENOC actually transported any equipment from Louisiana. On the record before the Court, this is not a contact.

ENOC's third purported contact is that it allegedly "insisted on, and performed, detailed review and discussion of the details of the [Louisiana equipment] …. The sourcing and details of the [Louisiana equipment] were developed from this discussion and under the detailed specifications required and demanded by [ENOC]."[56] Put simply, ENOC provided specifications for the equipment required, then reviewed and discussed the specifications for the equipment that Alert proposed, which happened to come from Louisiana. There is no allegation that ENOC required Alert to source the equipment from Louisiana. This additional "contact" is more or less a restatement of the first purported "contact" and is equally questionable as its sufficiency.

Alert urges the Court to follow the principles that the Fifth Circuit provided in *Mississippi Interstate Exp., Inc. v. Transpo., Inc.*[57] As the Court stated in a prior *Ruling*:

> [The *Mississippi Interstate* court] stated some basic principles relevant here. First, "[t]he rule developed by this circuit, however, is that when a nonresident defendant takes 'purposeful and affirmative action,' the effect of which is 'to cause business activity, foreseeable by [the defendant] in the

---

[55] *Id*. (internal citations omitted).
[56] Rec. Doc. No. 85-1, p. 5.
[57] 681 F.2d 1003 (5th Cir. 1982); Rec. Doc. No. 85, p. 8.

forum state,' such action by the defendant is considered a 'minimum contact' for jurisdictional purposes." The court went on to say that the defendant, by contracting with the Mississippi plaintiff, purposefully availed itself of the privilege of conducting activities within Mississippi if it was "reasonably foreseeable that [the plaintiff] would in fact perform a material part of its contractual obligations within the forum state." The court continued its analysis by noting that the defendant was no "mere passive customer." Instead, the defendant exercised a "significant measure of control" over the details of each shipment. Furthermore, "the relationship between the parties was sustained (not 'single' or 'fortuitous'), and the plaintiff performed its part of the undertaking at its sole place of business in Mississippi as was known to the California defendants at the outset of their relations."[58]

Applying the principles above, the Court concludes that ENOC's contacts with Louisiana do not rise to the level required by due process. ENOC did not take "purposeful and affirmative action" that caused business activity in Louisiana. Rather, it approved the actions that Alert took that caused business activity in Louisiana. It is irrelevant that ENOC's passive actions contributed to a foreseeable effect in Louisiana because, as the Fifth Circuit has repeatedly stated, "'foreseeable injury alone is not sufficient to confer specific jurisdiction, *absent the direction of specific acts toward the forum*."[59] The critical point is that ENOC did not *directly* make a contact with Louisiana or a Louisiana resident. As in *Brokerwood Intern. (USA), Inc. v. Cuisine Crotone, Inc.*,[60] "[Alert] has alleged only effects—damages—and has not alleged or presented any evidence that [ENOC] intentionally directed [its] conduct toward Louisiana."[61] Alert's proposed extension of *Mississippi Interstate*, taken to its logical extreme, would expose a foreign defendant to litigation in any jurisdiction from which it indirectly, but knowingly, procures supplies. Due

---

[58] Rec. Doc. No. 54, p. 16 (quoting *Mississippi Interstate*, 681 F.2d at 1007–08) (internal citations omitted).
[59] *Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 382 (5th Cir. 2004) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir.1999)).
[60] 104 Fed. App'x. 376 (5th Cir. 2004).
[61] *Id*. at 382.

process and the maintenance of international comity and rapport cannot countenance that result.[62]

Moreover, unlike in *Mississippi Interstate*, the "material part of [Alert's] contractual obligations" were not to be performed in Louisiana. The contract between Alert Middle East and ENOC required Alert Middle East to provide:

> Industrial Firefighting/Standby Fire Protection Services encompassing the provision of specialist personnel, equipment, systems, materials, products and further technical/product support for the performance or attempted performance of flammable liquid vapor suppression and contingent full-scale fire extinguishment operations involving a storage tank sunken external floating roof incident [in] Jebel Ali, United Arab Emirates.[63]

The procurement of the equipment was merely incidental to Alert Middle East's obligation to provide industrial firefighting and standby fire protection services in the UAE.

The foreseeability component of the purposeful availment inquiry confirms this result. As this Court previously stated: "[i]n *World-Wide Volkswagen Corp. v. Woodson*, the United States Supreme Court held that 'the foreseeability that is critical to the due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'"[64]

Simply put, ENOC had almost no connection to Louisiana. The contract at issue was between three foreign entities. It was formed in the UAE. It was to be performed in the UAE. Alert's invoices directed payment to an account in Singapore.[65] The *only* connection to Louisiana that ENOC had on the record before the Court was that it knew

---

[62] See *Daimler AG v. Bauman*, 571 U.S. 117, 141, 134 S. Ct. 746, 763, 187 L. Ed. 2d 624 (2014) (identifying over-expansive views of personal jurisdiction as a risk to international comity and rapport).
[63] Rec. Doc. No. 85-1, p. 5.
[64] Rec. Doc. No. 54, p. 14 (cleaned up).
[65] Rec. Doc. No. 86-2, p. 60.

of and approved Alert Middle East's procurement of equipment from Louisiana. This attenuated and indirect connection to Louisiana did not make it foreseeable that ENOC could be haled into court in the forum. Alert urges two more arguments as to foreseeability.

First, Alert cites an Eastern District of Louisiana case, *Consolidated Companies, Inc. v. Kern*,[66] for the proposition that "it is not necessary that the contract explicitly state the possibility of business activity in the forum state. This can be implicit and taken from the circumstances."[67] Consolidated Companies ("Conco") (a Louisiana corporation) sued Kern (a Texas resident) seeking to recover on a guaranty of debts.[68] Conco had provided wholesale food and service products to several of Kern's businesses throughout Texas.[69] Kern executed a guaranty by which he personally guaranteed all of the debts owed by his companies in order to induce Conco to provide credit to those companies.[70] Kern moved to dismiss for lack of personal jurisdiction.[71]

The court held that it could exercise jurisdiction. It stated that subsequent business activity was "certainly foreseeable" to Kern because the guaranty explicitly stated that Kern executed the guaranty to induce Conco to provide credit to his companies.[72] The court also noted that "[i]t was implicit within the [g]uaranty's extension of credit to [Kern's companies]…that the credit would be used to purchase food and supplies sold by

---

[66] 2000 WL 1036186 (E.D.L.A. July 25, 2000).
[67] Rec. Doc. No. 85, p. 11.
[68] *Id.* at 1.
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.* at 3.

Conco."[73] Moreover, "[i]t was reasonable to assume that Kern, as the sole shareholder of the [c]ompanies, could anticipate these future purposes."[74] The instant case is distinguishable because unlike ENOC, Kern had a direct contact with Louisiana. He contracted with Conco, a Louisiana resident, to guaranty the debts of his companies, which were conducting extensive business with Conco.[75] Here, ENOC had no direct contact with Louisiana, so *Consolidated Companies* does not apply.

Alert also urges that the presence of an indemnity clause in the ENOC contract made it foreseeable that ENOC could be haled into court in Louisiana. The ENOC contract requires ENOC to indemnify Alert Middle East for, according to Alert, "all activities under the [ENOC] contract."[76] For the purposes of this *Motion*, the Court accepts Alert's interpretation of the indemnity provision. Alert asserts that ENOC knew that Alert Middle East was sourcing equipment from Louisiana, and the indemnity provision includes losses related to that sourcing of equipment, therefore it should have been foreseeable to ENOC that it could be haled into court in Louisiana. Alert cites two cases in support.

In *Lake Charles Harbor & Terminal District v. Reynolds Metal Co.*,[77] a Western District of Louisiana case, the Lake Charles Harbor & Terminal District ("the District") sued Reynolds Metal Company, LCC ("Reynolds") asserting that Reynolds was liable for the environmental remediation of a parcel of land located in Calcasieu Parish, Louisiana.[78] Reynolds then filed a third-party action against Lonza Group Ltd and Lonza America Inc.

---

[73] *Id*.
[74] *Id*.
[75] Conco delivered wholesale food and service supplies to 58 locations in Texas over the course of several years. *Id*. at 1.
[76] Rec. Doc. No. 85, p. 11. See Rec. Doc. No. 85-1, p. 6.
[77] 2021 WL 2383918 (W.D.L.A. June 10, 2021).
[78] *Id*. at 2.

("Lonza").[79] Reynolds asserted that pursuant to the terms of a settlement agreement between Lonza and Reynolds, Lonza had assumed all liabilities for the parcel of land and had indemnified Reynolds for all claims arising out of the parcel.[80] The District amended its complaint and added Lonza as a defendant.[81] In response to Lonza's motion to dismiss for lack of personal jurisdiction, the District argued that "specific personal jurisdiction exists as to [Lonza] based on [its] assumption of real obligations relating to the leases and immovable property at issue, and [its] appearance in this proceeding without objection as to jurisdiction in response to Reynolds' third-party demand arising from these same obligations."[82]

The court held that it could exercise personal jurisdiction over Lonza as to the District's suit against it for several reasons.[83] First, Lonza "expressly agreed to indemnify and defend Reynolds for claims arising out of the [parcel of land]."[84] Louisiana was the most logical forum because the parcel of land was in Louisiana, and, therefore it was foreseeable Lonza could be haled into court there. The court also noted that there was no other forum in which the District could assert its claims against Lonza for its indemnity obligations.[85] Additionally, the court deemed it relevant that Lonza would not be prejudiced because it was already involved in the suit as to Reynolds, due to its waiver of its jurisdictional arguments.[86] Finally, the court noted Louisiana's interest in protecting

---

[79] *Id*.
[80] *Id*.
[81] *Id*. at 2.
[82] *Id*.
[83] *Id*. at 7.
[84] *Id*.
[85] *Id*.
[86] *Id*.

Document Number: 70506

and preserving immovable property within the state.[87] The instant case is distinguishable.

In *Lake Charles Harbor & Terminal District*, Louisiana was the most logical and only available forum because the subject matter of the suit related to real property in the state. Lonza's express indemnity of Reynolds as to that property made it certain that if litigation commenced, it would take place in Louisiana because Louisiana was where the property was located. Here, the crux of the suit is a contract between two UAE entities which was negotiated, executed, and intended to be performed in the UAE. The fact that the ENOC contract's indemnity provision could be construed to cover Alert's damages related to a suit in Louisiana does not make it foreseeable that a suit upon the ENOC contract would occur in Louisiana. *Lake Charles Harbor & Terminal District* is inapplicable.

Alert also cites *Casun Invest, A.G. v. Ponder*,[88] a District of Nevada case. Lezlie Gunn ("Gunn"), a third-party plaintiff and Nevada resident, sued Hans-Peter Wild ("Wild"), a third-party defendant and Switzerland resident, seeking indemnification related to the purported sale of real property in Nevada.[89] Gunn and Wild had entered into an indemnity agreement which provided for Nevada choice of law.[90] The court interpreted the agreement as indemnifying Gunn in any jurisdiction.[91] The court held that Gunn had established that Wild had minimum contacts with Nevada.[92]

The instant case is distinguishable. Wild indemnified a Nevada resident. Therefore,

---

[87] *Id*.
[88] 2018 WL 934857 (D. Nev. Feb. 16, 2018).
[89] *Id*. at 1.
[90] *Id*.
[91] *Id*. at 5.
[92] *Id*.

it was foreseeable that Wild may be haled into Nevada court to defend that resident. Here, Alert indemnified a UAE resident. That indemnification did not make it foreseeable that ENOC could be haled into a Louisiana court based on that indemnification. Further, Wild's indemnification of a Nevada resident was itself a contact with Nevada. No such contact exists here. Alert's reliance on the indemnity clause in the ENOC contract is unavailing.

In sum, the Court finds that ENOC did not purposefully avail themselves of the privileges and benefits of doing business in Louisiana. ENOC's contacts were limited to the approval of Alert's sourcing of equipment from Louisiana. As such, these contacts were indirect, transitory, and fortuitous. Moreover, ENOC could not have reasonably foreseen being haled into court in Louisiana based on these contacts. Because the Court concludes that ENOC lacks minimum contacts, it is not necessary to analyze the remaining prongs of the personal jurisdiction inquiry. ENOC's *Motion* must be granted.

### III.    CONCLUSION

For the reasons set forth above, ENOC's *Motion to Dismiss*[93] under Rule 12(b)(2) is GRANTED. The *Third-Party Complaint*[94] is dismissed without prejudice. Alert shall have 21 days from the date of this *Ruling* to amend their *Third-Party Complaint*. If Alert fails to do so, this dismissal will convert to a dismissal with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 11, 2022</u>.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[93] Rec. Doc. No. 72.
[94] Rec. Doc. No. 67.